No. 25-2358

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

**COMMUNITY LEGAL SERVICES IN EAST PALO ALTO**, et al.
Plaintiffs-Appellees,

v.

**UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES**, et al.
Defendants-Appellants.

_____

On Appeal from the United States District Court
for the Northern District of California
District Court Case No. 3:25-cv-02847

_____

**DEFENDANTS-APPELLANTS' PETITION FOR REHEARING EN BANC
FROM THE PANEL'S ORDER OF APRIL 18, 2025**

_____

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
KATELYN MASETTA ALVAREZ
JONATHAN K. ROSS
Senior Litigation Counsels

ZACHARY A. CARDIN
Trial Attorney

MICHAEL A. CELONE
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-2040
michael.a.celone@usdoj.gov

Attorneys for Defendants-Appellants

1

## INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 40 and Ninth Circuit Rule 40-1, Defendants-Appellants U.S. Department of Health and Human Services (HHS), Office of Refugee Resettlement (ORR), and U.S. Department of the Interior (DOI) respectfully petition this Court for rehearing en banc of the Panel's April 18, 2025 Order dismissing Defendants-Appellants' appeal of the district court's Temporary Restraining Order (TRO), issued on April 1 and extended by an additional 14 days on April 10, 2025.

The Panel's summary dismissal rests on a mischaracterization of the district court's TRO and conflicts directly with controlling Supreme Court and Ninth Circuit precedent regarding the appealability of orders compelling immediate, likely irrecoverable, government expenditures. *See*, *e.g.*, *Dep't of Educ. v. California*, 145 S.Ct. 966, 968 (2025). Furthermore, the underlying TRO ignores fundamental jurisdictional limits under the Administrative Procedure Act (APA) and the Tucker Act, asserting authority over monetary claims that Congress has exclusively vested in the Court of Federal Claims. En banc review is therefore warranted to secure uniformity of decisions within the Circuit, to resolve a question of exceptional importance concerning judicial power over the public fisc, and to correct a manifest jurisdictional error impacting the separation of powers.

2

## STATEMENT OF GROUNDS FOR REHEARING EN BANC

This petition satisfies Fed. R. App. P. 35(b)(1) for two mutually reinforcing reasons:

### I.    The Panel Decision Conflicts with Controlling Supreme Court and Ninth Circuit Authority on Appealability.

In dismissing Appellants' appeal (and denying Appellants' emergency motion to stay as moot), the Panel summarily concluded that the district court's temporary restraining order "is not appealable under 28 U.S.C. § 1292(a)(1)," and cited *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 762 (9th Cir. 2018) and *Washington v. Trump*, 847 F.3d 1151, 1158 (9th Cir. 2017). Order, Dkt. Entry. No. 16.1

This holding irreconcilably conflicts with the Supreme Court's recent decision in *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025), which is on all fours with this case. There, the Supreme Court vacated a TRO that, like the district court's TRO here, compelled the government to continue funding terminated government contracts. *Id*. at 1. The Supreme Court held that such an order, despite its label, functions as an appealable preliminary injunction under 28 U.S.C. § 1292(a)(1), particularly when that order follows an adversarial hearing, was strongly challenged on jurisdictional and merits grounds, and mandates potentially irrecoverable expenditures. *Id*. The order here shares all of those characteristics, and is thus plainly appealable under the Supreme Court's recent ruling—yet the panel did not even acknowledge *Dep't of Education.*

2

The Panel decision also conflicts with this Court's own precedent, which recognizes that TROs are appealable where they follow an adversarial hearing, are strongly challenged, and remain in force beyond Rule 65(b)'s 14-day temporal limit, thereby having the practical effect of a preliminary injunction. *See E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 762 (9th Cir. 2018); *see also Washington v. Trump*, 847 F.3d 1151, 1158 (9th Cir. 2017) (per curiam). The Panel cited those decisions yet gave no reason to distinguish this case. The Panel thus created an intra-circuit split by its dismissal, which warrants rehearing en banc to secure the uniformity of this Court's precedents on the critical and increasingly oft-litigated issue of when TROs function as appealable injunctions.

## II.     The Case Presents an Exceptionally Important Question Regarding Federal Court Jurisdiction Over Monetary Claims Against the Government.

By improperly deeming the district court's order an unappealable TRO, the Panel's decision also precludes further appellate review of the district court's contravention of recent Supreme Court precedent on a critically important jurisdictional issue. As underscored by *Dep't of Education*, the APA does not waive sovereign immunity for claims seeking monetary relief or specific performance of contractual funding obligations. Indeed, the APA does not waive sovereign immunity over any claims involving monetary relief. 5 U.S.C. § 702 (waiving sovereign immunity over actions seeking relief "other than money damages[.]"); *see also Dep't of Educ.*, 145 S. Ct. at 968. Rather, such claims, including those disguised

3

as requests for equitable relief, fall within the Tucker Act's channeling of review to the Court of Federal Claims. *See Dep't of Educ.*, 145 S. Ct. at 968. Yet the district court here sidestepped that rule, and the Panel's refusal to review TROs *at all* effectively allows the district court to usurp HHS's discretionary authority and seize Article II powers that district courts cannot exercise—an irreparable injury in of itself. Not only that, allowing district courts to manage federal funding decisions inflicts irreparable injury on the public fisc through unreviewable, compelled expenditures. *Id*. at 969 (recognizing irreparable harm to the government where "it is unlikely to recover [compelled] funds once they are disbursed," and particularly where "the District Court declined to impose bond"). This presents a question of exceptional importance warranting en banc consideration.

## BACKGROUND

On March 20, 2025, ORR, which is a component of HHS, directed DOI to partially terminate ORR's contract with the Acacia Center for Justice ("Acacia"). Under its contract, Acacia provides legal services and other assistance to unaccompanied alien children who are in the care of or released from the care of ORR.[1] This partial termination was executed through a formal decision

---

[1]    *See Community Legal Services in East Palo Alto v. HHS*, No. 3:25-cv-02847 (N.D. Cal.), Attachment 1 (Decl. of Toby R. Biswas (Mar. 1, 2025), ECF No. 24-1, ¶¶ 11–13.

4

memorandum signed by the DOI Acting Assistant Secretary of the Administration for Children and Families ("ACF").[2]

On March 26, 2025, eleven organizations ("Appellees"), including Community Legal Services in East Palo Alto ("CLSEPA"), who subcontract with Acacia, filed this lawsuit against Appellants, claiming that Appellants' notice of the partial termination of the Acacia contract violated the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, and HHS's applicable regulations.[3]   ECF No. 1.  Appellees sought relief under the Administrative Procedure Act.  *Id.*

On March 27, 2025, Appellees moved for a temporary restraining order ("TRO"), under Fed. R. Civ. P. 65(b), or, alternatively, for a preliminary injunction, under Fed. R. Civ. P. 65(a).  ECF No. 7. Later the same day, the district court issued an order directing Appellants to respond in writing to the TRO motion no later than noon on March 31, 2025 and set a hearing for April 1, 2025.  ECF No. 17.

---

[2]      *Id.* ¶¶ 13–14.

[3]      The organizations are: Galveston-Houston Immigrant Representation Project, Vermont Asylum Assistance Project, Amica Center for Immigrant Rights, Immigrant Defenders Law Center, Northwest Immigrant Rights Project, Social Justice Collaborative, National Immigrant Justice Center, CLSEPA, Estrella Del Paso, Rocky Mountain Immigrant Advocacy Network, and Florence Immigrant and Refugee Rights Project.  ECF No. 1

On March 31, 2025, Appellants submitted a 21-page written opposition to Appellees' TRO motion. ECF No. 24. Appellants argued, among other things, that the district court lacked jurisdiction over Appellees' claims, because they seek monetary relief arising out of the partial termination of a government contract, which is covered by the Tucker Act, and because the APA does not waive sovereign immunity for contract claims for which a plaintiff purports to seek equitable relief. ECF No. 24 at 15–18 (citing *N. Star Alaska v. United States*, 14 F.3d 36, 38 (9th Cir. 1994)). Appellants noted that claims based upon a contract with the United States are subject to the jurisdictional restrictions in the Tucker Act, 28 U.S.C. § 1491(a)(1). ECF No. 24 at 16–18 (citing *North Side Lumber v. Block*, 753 F.2d 1482, 1486 (9th Cir. 1985), *cert. denied*, 474 U.S. 931 (1985); *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967–68 (D.C. Cir. 1982)).

On April 1, 2025, the district court held a hearing on Plaintiffs' motion for a TRO, where counsel for both sides were present and permitted to present argument for nearly 90 minutes. Later that day, the district court issued an order in which it granted Plaintiffs' request for a TRO, to be effective starting at 8:00 am PST on April 2, 2025. ECF No. 33.

In a six-page memorandum, the district court applied the traditional preliminary-injunction factors and concluded that Appellees had raised serious questions regarding the merits. *Id*. at 3–5. Further, the district court concluded that Appellees showed that they were likely to suffer irreparable harm in the absence of

6

preliminary relief because the termination of funding has allegedly "forc[ed]" Appellees "to issue layoff notices and threatening to require them to dismiss their highly-specialized and seasoned attorneys." *Id.* at 5. Finally, the district court disagreed with Defendants' allegation that the government would suffer harm from being compelled to spend down congressionally appropriated funds during the pendency of the preliminary injunctive relief. *Id.* 6. The district court concluded that Appellants' termination of the contract "potentially violates Congress's express directive in the TVPRA and ORR's own commitments in the Foundational Rule," *id.*, and observed that "[t]here is generally no public interest in the perpetuation of unlawful agency action," *id.* at 5 – 6 (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citations omitted)).

The district court ordered that

> Defendants are ENJOINED from withdrawing the services or funds provided by the Office of Refugee Resettlement ("ORR") as of March 20, 2025, under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(c)(5), and ORR's Foundational Rule, 45 C.F.R. § 410.1309(a)(4), particularly ORR's provision of funds for direct legal representation services to unaccompanied children. This injunction precludes cutting off access to congressionally appropriated funding for its duration.

ECF No. 33 at 7.

Following the district court's entry of the TRO here, the Supreme Court granted the government's request to vacate the TRO at issue in *Dep't of Education*. There, the Supreme Court held that the government was "likely to succeed in

7

showing the District Court lacked jurisdiction to order the payment of money under the APA" such that the district court could not compel the government to continue paying terminated Department of Education grants; instead, such cases must proceed, if at all, in the Court of Federal Claims. *Dep't of Educ.*, 145 S. Ct. at 968. Immediately thereafter, Appellants moved on April 4, 2025 to dissolve the temporary restraining order, ECF No. 38—filed subsequent to Appellees' own motion for a preliminary injunction earlier that day, ECF No. 37. In the alternative, Appellants requested a stay of the TRO.

On April 7, 2025, Plaintiffs filed an emergency motion to enforce the TRO. ECF No. 40.  Later that day, the Court ordered Defendants to submit a status report recounting the specific steps taken to comply with the injunction. ECF No. 42.

On April 8, Appellants moved to recuse the district court judge pursuant to 28 U.S.C. § 455 and for reassignment of the case.  ECF No. 47.  In their motion, Appellants noted, *inter alia*, the district court judge's past employment with CLSEPA, one of the Appellees, and the relevance of the judge's employment to the issues in this case. *Id*. at 4 – 5, 7.  Defendants also submitted a status report regarding compliance with the TRO.  ECF No. 45.

On April 10, the district court issued an order in which it extended the TRO and ordered that it remain in effect until April 30, 2025, at 7:59 am PST.  ECF No.

48.  The district court thus extended the TRO so that its duration is 27 days, 23 hours and 59 minutes, or, put another way, exactly one minute short of 28 days.[4]

On April 11, 2025, the government filed a notice of appeal, and on April 14, 2025, the government moved for a stay of the TRO. DktEntry 5.1. On April 15, the Ninth Circuit Panel ordered the government to file a statement explaining why the appeal should not be dismissed for lack of jurisdiction. DktEntry 6.1. On April 16, the government filed its statement, explaining that the Ninth Circuit had jurisdiction because the TRO carried the hallmarks of a preliminary injunction given that the government strongly challenged the TRO; the district court held a hearing before granting the TRO; and the district court extended the TRO beyond the 14-day timeframe in Fed. R. Civ. P. 65(b)(2). DktEntry 16.1. On April 18, the Panel issued a two-sentence decision dismissing the appeal because it lacked jurisdiction, citing *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 762 (9th Cir. 2018) and *Washington v. Trump*, 847 F.3d 1151, 1158 (9th Cir. 2017). DktEntry 16.1.

---

[4] The district court stated that:

> Before the Court is Defendants' motion for recusal and reassignment. The Court must address this pending motion before further consideration of the case.  Thus, the Court finds that consideration of the motion for recusal constitutes good cause requiring extension of the [TRO] dated April 1, 2025 . . . Accordingly, the Court hereby **EXTENDS** the TRO, and it shall remain in effect until Wednesday, April 30, 2025, at 7:59 a.m. PST.

ECF No. 48.

On April 21, 2025, the district court denied the government's motion to dissolve, distinguishing *Dep't of Education* because the Supreme Court found that the TRO in that case "required" the government to pay past-due balances. *See* ECF No. 75. It also explained that no contract exists in this case because Plaintiffs do not have a contract with the federal government. *Id.* at 4–5.

## ARGUMENT

### I. Rehearing En Banc is Warranted Because the Panel's Decision Directly Conflicts with Supreme Court and Ninth Circuit Precedent.

Rehearing en banc is warranted here because the Panel decision conflicts with the Supreme Court's decision in *Dep't of Education v. California*, 145 S.Ct. 966, 968 (2025). Fed. R. App. P. 40(b). In *Dep't of Education*, the Supreme Court held that the TRO "carries many of the hallmarks of a preliminary injunction" because the government "strongly challenged" the basis for the district court's jurisdiction, and that the government was likely to succeed in showing the district court lacked jurisdiction to order the payment of money under the APA. *Id.* The relevant facts in this case are nearly identical to those in *Dep't of Education*: the government strongly opposed the TRO in its brief and at a hearing, and the government is likely to succeed on the merits of its argument that the district court lacks jurisdiction over Plaintiffs' APA claims because Plaintiffs seek monetary relief. Specifically, Plaintiffs' TRO motion asks the district court to enjoin Defendants from "cutting off access to congressionally appropriated funding" for direct legal representation services. ECF

10

No. 7 at 37.  Indeed, the precise harm that Plaintiffs allege is plainly monetary: their purported "lack of funding." *Id*. at 16–17 ("ceasing funding . . . will cause imminent harm," which Plaintiffs quantify through specific operational costs they will bear to sustain services "without this funding").

The Panel's decision also conflicts with a decision of the Ninth Circuit, and the full court's consideration is therefore necessary to secure or maintain uniformity of its decisions. Fed. R. App. P. 40(a). Like the Supreme Court, the Ninth Circuit has held that a TRO may be appealed as an interlocutory order if it "possesses the qualities of a preliminary injunction." *Washington v. Trump*, 847 F.3d 1151, 1158 (9th Cir. 2017). "This rule has ordinarily required the would-be appellant to show that the TRO was strongly challenged in adversarial proceedings before the district court and that it has or will remain in force for longer than the fourteen-day period identified in Federal Rule of Civil Procedure 65(b)." *Id.* (finding that the TRO was appealable where the government "vigorously contested the legal basis for the TRO in written briefs and oral arguments" and the TRO was in place more than 14 days); *see also E. Bay*, 932 F.3d at 762 (same). As explained *supra*, the TRO here functions as a preliminary injunction. Despite the government's showing that it strongly opposed the TRO in its written briefs and at oral argument, that the TRO will be in place more than 14 days, and that the government is likely to prevail on the merits in light of *Dep't of Education*, 145 S. Ct. at 968, the Panel dismissed the government's appeal without any analysis explaining how the government did not

11

meet the jurisdictional requirements in *E. Bay* and *Washington*. Because the Panel's decision conflicts with Ninth Circuit precedent, rehearing en banc is necessary to ensure uniformity of the circuit court's decisions.

The practical effect of the district court's TRO, including compelling the expenditure of federal funds, renders it functionally equivalent to a preliminary injunction and, therefore, appealable. Where a TRO has the same effect as a preliminary injunction, it is appealable under 28 U.S.C. § 1292(a)(1). *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 762–63 (9th Cir. 2018) (citing *Sampson v. Murray*, 415 U.S. 61, 86–88 (1974)). A TRO may be treated as a preliminary injunction "where an adversary hearing has been held, and the court's basis for issuing the order [is] strongly challenged." *Id.* (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 804 (9th Cir. 2002)). The Supreme Court has further cautioned that a district court cannot "shield its orders from appellate review merely by designating them as [TROs], rather than as preliminary injunctions." *Sampson*, 415 U.S. at 86–87.

*First*, Appellants had an opportunity to be heard here, and the district court decided the TRO based on substantial briefing. *See E. Bay Sanctuary Covenant*, 932 F.3d at 763 (citing the appealing party's opportunity to brief and be heard as an important factor weighing in favor of appealability). Appellees' motion for a TRO before the district court expressly requested a preliminary injunction as an alternative to a TRO, demonstrating that Appellees believed their submission was

12

sufficient to sustain a preliminary injunction. And Appellants filed a 21-page brief in opposition to Appellees' motion, explaining why neither a TRO nor a preliminary injunction was appropriate. The district court held a 90-minute adversary hearing where Appellants strongly challenged the district court's basis for issuing the order, and issued an opinion that responded to both parties' submissions and arguments.

*Second*, the district court's TRO has the effect of a preliminary injunction. *See Abbott v. Perez*, 585 U.S. 579, 594 (2018) (holding that appellate jurisdiction under 28 U.S.C. § 1292(a)(1) extends to orders that have the "practical effect" of granting or denying an injunction, regardless of their label). An order labeled as a TRO is appealable if it might have "serious, perhaps irreparable, consequence[s]" and can be "effectually challenged only by immediate appeal." *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981) (internal quotation marks omitted); *see also Sampson*, 415 U.S. at 86, n.58 (explaining that the reason for interlocutory appellate review of preliminary injunctions, including those improperly labeled TROs, is "the possibility of drastic consequences which cannot later be corrected" (quoting *Nat'l Mediation Bd. v. Air Line Pilots Ass'n*, 323 F.2d 305 (1963)).

The TRO satisfies these criteria. Appellants' compliance with the TRO mandates the federal government to expend taxpayer funds, directly impacting the U.S. Treasury and interfering with the Executive Branch's discretionary administration of those funds as allocated by Congress. Such compelled spending constitutes a significant, ongoing intrusion, not merely the preservation of a status

13

quo. Indeed, once disbursed, these funds may be difficult or impossible to recover, causing irreparable financial injury to the government and frustrating the Executive's discretionary determination as to the lawful use of such appropriations. This practical effect is characteristic of mandatory preliminary injunctive relief, not a temporary restraint. Indeed, it is precisely the type of order that the Supreme Court held was an "appealable preliminary injunction" styled as a TRO in *Dep't of Educ.*, 145 S.Ct. at 968 (order that "enjoin[ed] the government from terminating various education-related grants" and "require[d] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue" was properly construed as appealable preliminary injunction). And because the district court refused to impose any bond requirement, any moneys paid out under the TRO could easily be irrecoverable. The TRO thus functions very much like an appealable injunction.

Finally, the TRO's duration, within the 28-day limit in Rule 65(b), does not shield it from appellate review. Without any "good cause" related to the alleged harm to Appellees, and days before the original TRO was set to expire, the district court extended the duration of the TRO to 28 days. But as explained above, the nature of the order is akin to an appealable preliminary injunction, not an order preserving the status quo to allow the court to consider the merits of the parties' claims.

14

## II.    Rehearing En Banc is Warranted Because the District Court Lacked Jurisdiction Under the APA and the Tucker Act.

The Panel's decision denying Appellants' appeal ignores the fact that the underlying TRO suffers from fundamental jurisdictional defects, an issue that independently warrants this Court's en banc review. The APA waives sovereign immunity for claims seeking "relief *other than money damages*." 5 U.S.C. § 702 (emphasis added). This narrow waiver does not extend to suits that, although framed as seeking equitable relief, are in essence attempts to compel the payment of money or enforce contractual obligations. Plaintiffs seek an order forcing Defendants to continue providing funds under a partially terminated contract. This is a demand for specific performance of a payment obligation—precisely the type of monetary relief for which the APA *does not* waive immunity. The Supreme Court confirmed this principle in *Dep't of Education*, stating the government was likely to succeed because the district court "lacked jurisdiction to order the payment of money under the APA." 145 S. Ct. at 968. The district court's assertion of APA jurisdiction in contravention of *Dep't of Education* was therefore clear error; and such error was further compounded by the Panel's failure to acknowledge and reconcile the Supreme Court's intervening authority constraining the district court's jurisdiction.

Furthermore, the APA's waiver does not apply if another statute "impliedly forbids the relief which is sought." 5 U.S.C. § 702. The Tucker Act, 28 U.S.C. § 1491(a)(1), grants the Court of Federal Claims exclusive jurisdiction

15

over claims against the United States exceeding $10,000 founded upon "any Act of Congress or any regulation [ ], or upon any express or implied contract" mandating payment. *Id.* This exclusive jurisdiction impliedly forbids district courts from adjudicating such contract-based claims, even when plaintiffs seek equitable relief like specific performance or an injunction compelling payment. Plaintiffs' claims here are, indeed, "founded upon" the Acacia contract with DOI; their asserted right to funding exists only because of that contract and their subcontracts under it. And they seek to compel continued performance (i.e., payment) under that contract: hallmarks of a quintessential Tucker Act claim. Plaintiffs cannot therefore escape the Court of Federal Claims' exclusive jurisdiction by styling their contract claim as an APA action.

In its per curiam opinion, the Supreme Court in *Dep't of Education* held that the government was likely to succeed in showing that the district court lacked jurisdiction to order the payment of money under the APA. *Dep't of Educ.,* 145 S. Ct. at 968. The Supreme Court stated that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money'" as the district court had ordered the government to continue, and that "the Tucker Act grants the Court of Federal Claims jurisdiction over [such] suits." *Id.* It therefore stayed the district court's temporary restraining order; this Court should do the same here.

16

Indeed, the Supreme Court's ruling confirms that the Plaintiffs' claims in this case sound in contract because they are seeking payment, and thus belong in the Court of Federal Claims. *Dep't of Educ.,* 145 S. Ct. at 968 ("[T]he APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money[.]'") (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U. S. 204, 212 (2002)).  What's more, Plaintiffs seek to compel payment under specific contractual instruments created and terminated in the agency's discretion; indeed, there exists no statutory obligation compelling the provision of payment for Plaintiffs' legal services.  While the district court determined this case to be distinguishable from *Dep't of Education* – because the district court here did not "require" past-due payments and because no contract exists between Plaintiffs and the agencies – the district court's analysis (and the Panel's summary dismissal) elide the facts in *Dep't of Education*. There, the district court did not explicitly require the government to pay past-due balances; rather, the district court in *Dep't of Education* required the government to "restore the status quo," and enjoined the government from terminating the grants. *California v. U.S. Dep't of Educ.*, No. CV 25-10548-MJJ, 2025 WL 760825, at *5 (D. Mass. Mar. 10, 2025). Past-due payments were simply an effect of the order—just like the government will ultimately have to pay past-due balances pursuant to the TRO here, even though the TRO does not explicitly require the government to make such payments.

17

The Panel's conflict with binding Supreme Court precedent thus further militates in favor of rehearing en banc.

### III.    Rehearing En Banc is Warranted Because the Questions at Issue are of Exceptional Importance.

This case implicates issues far beyond the specific provision of payment for legal services at issue here. Indeed, rehearing en banc is warranted here because the matter concerns fundamental principles of sovereign immunity, Executive discretion over the public fisc, and the separation of powers.

*First*, the Panel's summary dismissal undermines foundational separation of powers principles by permitting district courts to exercise jurisdiction over monetary claims against the United States in contravention of the Tucker Act, permits unreviewable district court orders to compel potentially vast, irrevocable expenditures of taxpayer funds, and encroaches on the executive discretion over fiscal administration.

In *Dep't of Education*, the Supreme Court acknowledged the irreparable injury to the government from the dispersal of funds that are unlikely to be recovered, as well as the government's significant interest in maintaining discretion over funding decisions. 145 S. Ct. at 969. Judicial interference with this discretion not only disrupts Executive Branch management of limited resources but also undermines the public interest by constraining the government's ability to effectively allocate taxpayer funds. Given the clarity of the Supreme Court's

18

instruction, the district court's analysis was thus legally flawed and an abuse of discretion.

*Second*, the district court also abused its discretion by denying the government's request for bond under Rule 65(c), as the district court essentially ordered the government to pay money that it will not be able to recover. *See Department of State v. AIDS Vaccine Advocacy Coal.*, 145 S. Ct. 753, 753 (2025) (Alito, J., dissenting) ("Does a single district-court judge who likely lacks jurisdiction have the unchecked power to compel the Government of the United States to pay out (and probably lose forever) millions in taxpayer dollars? The answer to that question should be an emphatic 'No[.]'"). If this decision stands, federal district courts will continue exceeding their jurisdiction by ordering the Executive Branch to restore lawfully terminated grants across the government, keep paying for programs that the Executive Branch views as inconsistent with the interests of the United States, and send out the door taxpayer money that may never be clawed back.

Indeed, the permanent effects of the TRO are all the more apparent considering the district court's refusal to set any bond—let alone bond high enough to allow the government to recoup the court-ordered expenditures. ECF No. 33 at 7 ("The Court deems no security bond is required under Rule 65(c)."). That determination—which is alone an abuse of discretion sufficient to vacate the district

court's order—ensures that the government will not be able to recoup the funds that go out the door.  This order assuredly does not maintain the status quo.

## CONCLUSION

For the reasons stated, this Court should grant Appellants' Petition for Rehearing En Banc.

April 23, 2025                           Respectfully submitted,

                                         YAAKOV M. ROTH
                                         Acting Assistant Attorney General
                                         Civil Division

                                         DREW C. ENSIGN
                                         Deputy Assistant Attorney General

                                         WILLIAM C. SILVIS
                                         Assistant Director

                                         CHRISTINA PARASCANDOLA
                                         KATELYN MASETTA ALVAREZ
                                         JONATHAN K. ROSS
                                         Senior Litigation Counsels

                                         ZACHARY A. CARDIN
                                         Trial Attorney

                                         /s/ *Michael A. Celone*
                                         MICHAEL A. CELONE
                                         Senior Litigation Counsel
                                         U.S. Department of Justice
                                         Civil Division
                                         Office of Immigration Litigation
                                         P.O. Box 878, Ben Franklin Station
                                         Washington, DC 20044
                                         Tel: (202) 305-2040
                                         michael.a.celone@usdoj.gov

                                         Attorneys for Defendants-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2025, counsel for Appellants electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system and that service will be accomplished via the CM/ECF system.

/s/ *Michael A. Celone*
MICHAEL A. CELONE
Dated: April 23, 2025                    Attorney for Defendants-Appellants